Filed 11/21/14  Adoption of Anthony F. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| Adoption of IN RE ANTHONY F., a Minor. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D066080 |
| Plaintiff and Respondent, | (Super. Ct. No. NJ13312A) |
| v. | |
| MELISSA F., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel.

Dependency Legal Group of San Diego and James Blackburn for Minor.

Melissa F. appeals from (1) a denial of her petition under Welfare and Institutions Code section 388[1] to modify the prior order denying reunification services in the juvenile dependency case involving her son, Anthony F., and (2) the juvenile court's order selecting adoption as the permanent plan and terminating Melissa's parental rights.

Melissa contends that the juvenile court should have held an evidentiary hearing on her section 388 petition, rather than denying it, because she showed changed circumstances based on her completion of a residential substance abuse treatment program and participation in parenting classes and therapy. Further, Melissa contends that her parental rights should not have been terminated because she established (1) Anthony is not likely to be adopted; (2) the sibling relationship exception to adoption applies; and (3) the beneficial relationship exception to adoption applies. We conclude that Melissa's arguments are without merit, and we accordingly affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Anthony, who was born in 2006, has been the subject of three juvenile dependency petitions filed pursuant to section 300 by the San Diego County Health and Human Services Agency (the Agency). The first and second petition resulted in Melissa receiving reunification services and eventually having Anthony returned to her care. The

---

1   Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

third dependency petition and the resulting order terminating Melissa's parental rights is the subject of this appeal.

A.   *The First Dependency Petition*

The Agency filed the first juvenile dependency petition when Anthony was less than one month old.  The petition alleged that Melissa abused marijuana and methamphetamine, creating a substantial risk of serious physical harm to Anthony.  Anthony's father was in prison, and Melissa had her parental rights to an older child terminated in November 2005 after the juvenile court ordered that reunification services be terminated for that child.

The juvenile court declared Anthony a dependent, placed Anthony in a licensed foster home, and ordered that Melissa receive reunification services.  Melissa participated in substance abuse treatment programs, took parenting classes and was in compliance with her case plan.  At the 18-month review hearing in July 2007, the juvenile court followed the Agency's recommendation that Anthony be placed in Melissa's care, and in October 2007, the juvenile court terminated jurisdiction.

B.   *The Second Dependency Petition*

The Agency filed the second juvenile dependency petition in September 2009.  The second petition was filed because Melissa relapsed into drug use and had been arrested for child cruelty and other offenses when she drove under the influence of drugs with Anthony in the vehicle.  Specifically, in September 2009, Melissa was pulled over by law enforcement when she was observed driving erratically, on a suspended license, causing other cars to swerve out of the way.  Three-year-old Anthony was sitting

3

unrestrained in the front passenger seat. Melissa had methamphetamine in her pockets, and a fixed blade was sticking up in the front driver's door. Melissa reported to the Agency that she had relapsed into methamphetamine use after she started associating with the wrong people and stopped attending 12-step meetings.

The juvenile court declared Anthony a dependent, placed him in the home of a non-relative extended family member and ordered reunification services for Melissa.[2]

Melissa made excellent progress on her services, which consisted of substance abuse treatment, individual therapy and parenting class. After a successful trial placement with Melissa, the juvenile court ordered that Anthony be returned to Melissa's care in May 2010, and it terminated jurisdiction in November 2010.

C.      *The Third Dependency Petition*

The Agency filed the third dependency petition, which gave rise to the current appeal, in July 2013 when Anthony was seven years old. The petition was filed after Melissa was arrested for willful cruelty to a child in May 2013 for driving under the influence of methamphetamine with Anthony's younger half-sister, F., in the car. F. was removed from Melissa's care immediately after the May 2013 incident, but a dependency petition was not filed as to Anthony at that time as he was being cared for by a relative. When Melissa took Anthony from the care of the relative in July 2013 and allowed her boyfriend, who had a history of substance abuse, to care for Anthony, the Agency took

---

2       The juvenile court also ordered reunification services for Anthony's father, who was no longer incarcerated, but Anthony's father died from a stroke in September 2010.

Anthony into protective custody and filed a juvenile dependency petition alleging a substantial risk that Anthony would suffer serious physical harm based on Melissa's inability to provide required care to him due to her substance abuse.

The Agency recommended in the jurisdiction/disposition report filed August 2, 2013, that Melissa not receive reunification services. As the Agency explained, Melissa had been unable to successfully parent any of her children, despite the fact that the Agency had repeatedly provided services to her. Most recently, after F. was taken into protective custody, Melissa was provided services, but walked out of those programs. The Agency noted that after being in Melissa's care since the last dependency proceedings were completed, Anthony was once again exposed to trauma and neglect, and was far behind his peers educationally and developmentally. When Anthony was taken into protective custody in July 2013, he presented with a flat affect and was unable to answer certain simple questions.

On November 13, 2013, the juvenile court sustained the petition and declared Anthony a dependent. It adopted the Agency's recommendation to deny reunification services for Melissa and scheduled a section 366.26 hearing to select and implement a permanent plan. Anthony was placed with non-related extended family members.

The juvenile court relied on section 361.5, subdivision (b)(10) and (11) to deny reunification services to Melissa. Under those statutory provisions, a juvenile court may deny reunification services when the parent has failed to reunify with a different child or has had parental rights terminated as to a different child and has failed to make a

reasonable effort to treat the problems that led to removal of that child.[3]  As the juvenile court explained, those provisions applied to Melissa based on the termination of Melissa's parental rights to her oldest child in 2005 after reunification services were terminated.

In finding that Melissa had not made a reasonable effort to treat the substance abuse that led to the termination of parental rights for her oldest child, the juvenile court noted Melissa's multiple relapses into substance abuse since 2005, and the fact that after having F. taken away from her in May 2013, Melissa had been in three different treatment programs and had several positive drug tests, with the most recent being in July 2013.  The juvenile court further explained that although it could nevertheless order reunification services if doing so was in Anthony's best interests (§ 361.5, subd. (c)), it was not in Anthony's best interests to reunify with Melissa because Anthony had been traumatized by the instability created by the multiple dependency proceedings and

---

[3]     Under section 361.5, subdivision (b)(10), reunification services may be denied when the juvenile court finds that "the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian."

Section 361.5, subdivision (b)(11) permits the juvenile court to deny reunification services when it finds that "the parental rights of a parent over any sibling or half sibling of the child had been permanently severed, and this parent is the same parent described in subdivision (a), and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent."

Melissa's substance abuse. In addition, Anthony had been diagnosed with cognitive and developmental delays requiring special attention that Melissa had been unable to provide.

On April 2, 2014, Melissa filed a petition under section 388, in which she asked the juvenile court to modify its November 13, 2013 order that denied reunification services to her. To establish the changed circumstances required for the section 388 petition, Melissa stated that (1) she had been in a residential drug treatment program since January 14, 2014, which she was planning to complete within the month and then move to transitional housing; (2) she had tested negative for substance use; (3) she was taking a parenting class; and (4) she was participating in individual therapy sessions.

The Agency opposed the section 388 petition. In its April 14, 2014 report, the Agency explained that Melissa had recently completed a residential drug treatment program in nine weeks by graduating early against the advice of her counselor, who believed that the nine-week treatment program was not sufficient to provide the tools for Melissa's long-term sobriety. The counselor felt that Melissa was not in the program to work on her sobriety but instead only to graduate from the program so she could seek reunification with her children. The counselor stated that Melissa " 'consistently turned in requirements late and required constant supervision' " and that she " 'made minimal progress while in treatment.' " The Agency pointed out that Melissa had previously completed treatment programs and had previously reunified with Anthony, but her substance abuse problems had returned in each previous instance.

Further, although Melissa stated that she planned to enroll in outpatient treatment after leaving the residential treatment facility, she did not do so, and she was unable to

7

provide the social worker with any plan for where she would live after leaving the residential treatment facility. The social worker was not able to reach Melissa after her graduation from the residential treatment facility, and Melissa had missed a visitation and phone call with Anthony since that time. Melissa had also been inconsistent or late in some of her visitation with Anthony in previous months, having not visited him at all from December 23, 2013, to February 5, 2014.

On April 14, 2014, the juvenile court denied the section 388 petition, concluding that Melissa had not established a prima facie case of changed circumstances or that the modification would be in Anthony's best interests.

At the hearing held pursuant to section 366.26 on May 2, 2014, the juvenile court terminated Melissa's parental rights and referred Anthony to the Agency to place him for adoption.

## II

## DISCUSSION

A. *The Juvenile Court Did Not Abuse Its Discretion in Denying Melissa's Section 388 Petition for Modification of the Order Denying Reunification Services*

We now turn to Melissa's first substantive argument, which is a challenge to the court's denial of her petition brought pursuant to section 388 to modify the order denying reunification services.

1. *Applicable Law*

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or

changed circumstances exist and (2) the proposed change would promote the best interests of the child. [Citation.] A parent need only make a prima facie showing of these elements to trigger the right to a hearing on a section 388 petition and the petition should be liberally construed in favor of granting a hearing to consider the parent's request." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) " 'A "prima facie" showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited.' " (*In re B.C.* (2011) 192 Cal.App.4th 129, 141.) "We review the juvenile court's summary denial of a section 388 petition for abuse of discretion." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250 (*Anthony W.*).)

Here, the juvenile court determined that Melissa had not established a prima facie case and accordingly denied the section 388 petition without an evidentiary hearing. Melissa contends that the juvenile court erred because her petition set forth sufficient facts to create a prima facie case of changed circumstances and established that provision of reunification services would be in the best interests of Anthony. As we will explain, we reject both contentions.

   2.   *The Juvenile Court Acted Within Its Discretion in Concluding That Melissa Did Not Establish a Prima Facie Case of Changed Circumstances*

Melissa contends that "the juvenile court abused its discretion in not at least holding an evidentiary hearing into the issues raised" because she "presented significant new evidence to the juvenile court in furtherance of her effort to be reunified with Anthony." Specifically, Melissa argues that her progress in completing her substance

9

abuse treatment, her participation in parenting classes and individual therapy sessions, and her positive visits with Anthony show that circumstances had changed sufficiently to warrant the provision of reunification services.

We begin our analysis by focusing on the basis for the juvenile court's denial of reunification services in November 2013. The juvenile court denied reunification services pursuant to section 361.5, subdivision (b)(10) and (11) because Melissa had not made reasonable efforts to treat the problems that led to the previous dependency proceedings. As we will explain, the juvenile court acted within its discretion to determine that as of April 2014, Melissa's section 388 petition did not show a change of circumstance with respect to the substance abuse problems that led to the previous dependency cases and to the filing of the instant dependency petition.

Although Melissa recently had completed a residential substance abuse treatment program, the reports from her counselor at the program were not positive. As we have explained, Melissa graduated from the program early, against the advice of her counselor. The counselor felt that Melissa had not addressed the substance abuse issues putting her at risk for another relapse and that Melissa had made only minimal progress in treatment. Further, Melissa had not enrolled in outpatient treatment after leaving the residential treatment facility and had missed or been late to visitation with Anthony since she filed the section 388 petition. Based on all that evidence, the juvenile court could reasonably conclude that Melissa had not shown that circumstances had changed and that she had taken steps to address her past parenting problems.

10

Melissa argues that the juvenile court should have held an evidentiary hearing rather than deny her petition on the ground that she did not establish a prima facie case. However, because the petition did not allege any facts showing sufficiently changed circumstances, there is no merit to Melissa's argument that an evidentiary hearing should have been conducted to determine whether evidence of changes circumstances could be developed. (See *In re Edward H.* (1996) 43 Cal.App.4th 584, 593 ["If a petitioner could get by with general, conclusory allegations, there would be no need for an initial determination by the juvenile court about whether an evidentiary hearing was warranted."].) The most that can be said is that there may have been *changing* circumstances, *not changed* circumstances. A showing of merely changing circumstances, however, "is not sufficient to require a hearing on the merits of [Melissa's] section 388 petition." (*In re A.S.* (2009) 180 Cal.App.4th 351, 358.) The petition did not set forth any facts indicating that Melissa was now capable of protecting Anthony and otherwise providing for his needs. (See *Anthony W.*, *supra*, 87 Cal.App.4th at p. 251 [conclusory allegations of completion of parenting class and regular visits with child insufficient to make prima facie showing of changed circumstances].)

3. *The Juvenile Court Acted Within Its Discretion in Concluding That Modifying the Order Denying Reunification Services Was Not in Anthony's Best Interests*

Melissa briefly argues that because she has addressed her substance abuse issues, she is now capable of providing a stable environment for Anthony, and thus it was in Anthony's best interests for the juvenile court to modify its order denying her reunification services.

We reject this argument because its factual premise fails. As we have explained, the evidence before the juvenile court showed that Melissa still presented a significant risk for relapse into substance abuse because she had not made significant progress in her residential treatment program and had not followed through by enrolling in outpatient treatment.

Anthony "should not be made to wait indefinitely for [Melissa] to become an adequate parent." (*Anthony W.*, *supra*, 87 Cal.App.4th at p. 252.) The juvenile court could reasonably conclude that, due to the trauma that Anthony had undergone by being the subject of three different dependency proceedings, and the lack of evidence that Melissa had taken significant steps in treating her substance abuse, Anthony's interest in permanency and stability outweighed any interest he may have had in the possibility of reunification with Melissa.

In sum, the juvenile court did not err in denying Melissa's section 388 petition.

B.      *The Juvenile Court Did Not Err in Terminating Parental Rights*

We next consider Melissa's contention that for three different reasons, the juvenile court erred in terminating her parental rights so that Anthony could be placed for adoption.

"Adoption, where possible, is the permanent plan preferred by the Legislature. . . . 'Only if adoption is not possible, or if there are countervailing circumstances, or if it is not in the child's best interests are other, less permanent plans, such as guardianship or long-term foster care considered.' . . . After the parent has failed to reunify and the court has found the child likely to be adopted, it is the parent's burden to show exceptional

12

circumstances exist."  (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573-574, citations omitted (*Autumn H.*).)

Here, Melissa contends that exceptional circumstances exist and the juvenile court erred in terminating her parental rights so that Anthony could be placed for adoption because (1) Anthony was not likely to be adopted; (2) the sibling relationship exception to adoption applies; and (3) the beneficial relationship exception to adoption applies.  As we will explain, Melissa's arguments lack merit.

      1.     *The Evidence Supports a Finding That Anthony Was Likely To Be Adopted*

The juvenile court may terminate parental rights if it determines by clear and convincing evidence the minor is likely to be adopted within a reasonable time. (§ 366.26, subd. (c)(1); *In re Zeth S.* (2003) 31 Cal.4th 396, 406; *In re B.D.* (2008) 159 Cal.App.4th 1218, 1231.)  " 'The issue of adoptability . . . focuses on the minor, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor.' "  (*Zeth S.*, at p. 406.)  "On review, we determine whether the record contains substantial evidence from which the court could find clear and convincing evidence that the child was likely to be adopted within a reasonable time. . . .  We give the court's adoptability finding the benefit of every reasonable inference and resolve any evidentiary conflicts in favor of the judgment of the trial court."  (*In re B.D.*, at p. 1232, citations omitted.)

Here, the record contains substantial evidence that Anthony is likely to be adopted. The social worker reported that, according to the adoption coordinator, there are 31 approved families in San Diego County that are interested and willing to adopt a child

with Anthony's characteristics. Further, the foster family that Anthony has been living with since the end of March 2014 has expressed an interest in adopting Anthony and has been approved for adoption.

Melissa argues that the juvenile court erred in finding that Anthony was likely to be adopted because of Anthony's history of developmental and cognitive problems. Melissa also contends that Anthony may not be a likely candidate for adoption because the original family that the Agency had identified as possibly being interested in adopting Anthony became unavailable. We reject Melissa's arguments.

Although the record contains evidence that Anthony has certain developmental and cognitive problems, due in part to the trauma and neglect he has experienced, the social worker nevertheless opined that Anthony was adoptable. The juvenile court was entitled to credit the social worker's assessment. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 53.)

In addition, the record shows that the first prospective adoptive family withdrew from consideration because of issues unique to that family, not because of any problems with Anthony. Supporting a finding that Anthony is likely to be adopted, the Agency had no problem in quickly identifying a new family interested in adopting Anthony. "[T]he fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent

14

or by some other family."  (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649-1650, italics deleted.)

2.    *Melissa Has Not Established the Sibling Relationship Exception to Adoption*

We next consider whether Melissa established the sibling relationship exception to adoption.  That exception applies when terminating parental rights would be detrimental to the child because "[t]here would be substantial interference with [the] child's sibling relationship . . . ."  (§ 366.26, subd. (c)(1)(B)(v).)  "In enacting this exception, the [L]egislature was concerned with preserving long-standing relationships between siblings which serve as anchors for dependent children whose lives are in turmoil."  (*In re Erik P.* (2002) 104 Cal.App.4th 395, 404.)  "To show a substantial interference with a sibling relationship the parent must show the existence of a significant sibling relationship, the severance of which would be detrimental to the child."  (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 952.)  Factors relevant to the analysis include whether the child and the sibling were raised together in the same home, whether they shared significant common experiences, whether they have a close and strong bond, and whether continued contact with the sibling is in the child's best interests compared to the benefit of legal permanence through adoption.  (§ 366.26, subd. (c)(1)(B)(v).)

The " ' "sibling relationship exception contains strong language creating a heavy burden for the party opposing adoption" ' " (*In re Naomi P.* (2005) 132 Cal.App.4th 808, 823), and "the application of this exception will be rare, particularly when the

15

proceedings concern young children whose needs for a competent, caring and stable parent are paramount." (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1014.)

We apply a substantial evidence standard of review to the factual issue of whether termination of parental rights would cause substantial interference with a sibling relationship. (*In re L.Y.L.*, *supra*, 101 Cal.App.4th at p. 947.) However, to the extent that the juvenile court exercises its discretion to determine whether substantial interference with a sibling relationship constitutes a compelling reason for determining that termination would be detrimental to the child, we apply an abuse of discretion standard of review. (*In re J.C.* (2014) 226 Cal.App.4th 503, 530; *In re K.P.* (2012) 203 Cal.App.4th 614, 622; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1315.)

Until recently, Anthony had lived in the same home with his younger half-sister, F., since her birth in 2012. The social worker reported that F. and Anthony share a close bond. The Agency reported that F.'s father was being provided with reunification services for F., who was currently placed with a relative. Anthony's foster parents, who want to adopt Anthony, are willing to facilitate a relationship between F. and Anthony, and they are willing to have F. move into their home and to adopt F. if she does not reunify with her father. F.'s father is also willing to allow visitation between the siblings.

The sibling relationship exception to adoption is applicable only when there is *substantial* interference with the sibling relationship. (§ 366.26, subd. (c)(1)(B)(v).) Because Anthony's prospective adoptive parents will allow sibling contact and are willing to adopt F. if she is not reunited with her father, the juvenile court reasonably could find that termination of Melissa's parental rights to Anthony would not cause a substantial

16

interference with the sibling relationship between F. and Anthony. (*In re Megan S.* (2002) 104 Cal.App.4th 247, 254 [when the social worker planned to place the child in one of 25 possible adoptive homes that would allow sibling contact, there would be no substantial interference with the sibling relationship].)

Further, to the extent that future contact between the siblings might not occur after termination of Melissa's parental rights, the trial court was within its discretion to determine that due to the extreme trauma experienced by Anthony through the course of three dependency proceedings, the stability that Anthony would finally gain through an adoptive placement would outweigh any detriment to him from losing the benefits of his bond with F. (*In re L.Y.L.*, *supra*, 101 Cal.App.4th at pp. 952-953.)

3.    *Melissa Has Not Established the Beneficial Relationship Exception to Adoption*

Finally, we consider whether Melissa has established the beneficial relationship exception to adoption. That exception applies when terminating parental rights would be detrimental to the child because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) The phrase "benefit from continuing the relationship" refers to a parent-child relationship that "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent[-]child

17

relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.)

We apply a substantial evidence standard of review to a finding on whether a beneficial relationship exists. (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 576.) To the extent the juvenile court exercises its discretion in determining whether it would be detrimental to the child to terminate a beneficial relationship that it has found to exist, we apply an abuse of discretion standard of review. (*In re J.C.*, *supra*, 226 Cal.App.4th at p. 530.)

Melissa argues that the beneficial relationship exception applies because the evidence regarding her visitation with Anthony shows that she has a positive parental relationship with Anthony that "is worth saving." Based on the evidence before the juvenile court, substantial evidence supports a finding that Melissa did not have the type of parental relationship with Anthony that warrants the application of the beneficial relationship exception.

To meet the burden of proof for the beneficial relationship exception, "the parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits — the parent must show that he or she occupies a parental role in the life of the child." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527; see also (*In re Jason J.* (2009) 175 Cal.App.4th 922, 936-937 (*Jason J.*); *In re Derek W.* (1999) 73 Cal.App.4th 823, 827 (*Derek W.*).) The evidence must establish more than merely "a loving and happy relationship" (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1419), and the parent

18

must be more than " 'a friendly visitor.' " (*Jason J.*, at p. 938.) "A child who has been adjudged a dependent of the juvenile court should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree, but that does not meet the child's need for a parent." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.)[4]

As the social worker explained, based on the interactions between Melissa and Anthony, Melissa "does not appear to have a parent-child relationship with Anthony" and instead has what "could be observed as an extended family member relationship." Although Melissa tries to engage Anthony during visits, he "does not stay in close proximity to his mother," "does not initiate affection" and often does not respond to Melissa's attempts to be affectionate. According to the social worker, Anthony enjoys spending time with Melissa, but "does not count on her to meet his needs as he would with a parent" and "does not exhibit any distress when leaving her and does not talk about her or ask for her when he is not in her presence."

Based on this evidence, the juvenile court reasonably could conclude that Melissa did not establish that she "occupies a parental role in the life of the child." (*In re I.W.*,

---

[4] Melissa relies heavily on our decision in *In re S.B.* (2008) 164 Cal.App.4th 289, 299, where we held a parent relying on the beneficial parent-child relationship exception to adoption does not have "to prove the child has a 'primary attachment' to the parent, or to show the parent and the child have maintained day-to-day contact." But we have since "emphasize[d] that [*In re*] *S.B.* is confined to its extraordinary facts. It does not support the proposition a parent may establish the parent-child beneficial relationship exception by merely showing the child derives some measure of benefit from maintaining parental contact." (*In re C.F.* (2011) 193 Cal.App.4th 549, 558-559; accord, *Jason J.*, *supra*, 175 Cal.App.4th at p. 937.)

*supra*, 180 Cal.App.4th at p. 1527), and that Melissa's relationship to Anthony "bears no resemblance to the sort of consistent, daily nurturing that marks a parental relationship." (*Derek W.*, *supra*, 73 Cal.App.4th at p. 827.)

Although, as the social worker noted, Melissa "clear[ly] . . . loves Anthony," the positive aspects of Melissa's relationship with Anthony are " 'simply not enough to outweigh the sense of security and belonging an adoptive home would provide.' " (*Jason J.*, *supra*, 175 Cal.App.4th at p. 938.)  The beneficial relationship exception does not apply, as "[t]here is no evidence [Anthony] had any needs only [Melissa] can satisfy, or that he has the type of emotional attachment to [Melissa] that would cause him to be greatly harmed if parental rights were terminated."  (*Ibid.*)

## DISPOSITION

The judgment is affirmed.


IRION, J.

WE CONCUR:


BENKE, Acting P. J.


NARES, J.